**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) ) ANTHONY P. DIAZ, ) ) ) Debtor ) _____) ) SARA COADY, ) ) Plaintiff, ) ) v. ) ) ANTHOY P. DIAZ, ) ) Defendant. ) _____) | On appeal from U.S. Bankruptcy Court for the Northern District of Illinois Eastern Division<br><br>Bankr. Case No. 15-43244 (DLT)<br><br><br><br>Judge Rebecca R. Pallmeyer<br><br>Civil Case No. 16 C 9249 |

## MEMORANDUM OPINION AND ORDER

Anthony Diaz pleaded guilty to a charge of domestic battery. His victim, Sara Coady, sued him in state court, where Diaz stipulated to a judgment in the amount of $100,000. Six months later, Diaz filed a Chapter 7 bankruptcy proceeding. The bankruptcy judge held the battery judgment non-dischargeable pursuant to 11 U.S.C. § 523, which recognizes an exception to dischargeability for a debt resulting from "willful and malicious injury by the debtor to another entity." Diaz appeals from the denial of a discharge for this debt, but for the reasons explained here, the Bankruptcy Court ruling is affirmed.

## BACKGROUND

On August 24, 2013, Appellant Anthony Diaz was arrested on probable cause for the battery of his then-girlfriend, Sara Coady. (Bankr. R. 114.) Coady alleged that Diaz threatened, confined, punched, and choked her on numerous occasions beginning in August 2012, and continuing over the next two years until a final assault left Coady hospitalized with a concussion

and facial injuries. (Bankr. R. 93–96.) On June 18, 2014, Diaz pleaded guilty to the charge of domestic battery and was convicted.[1] (Bankr. R. 115.)

Two months later, Coady commenced a civil case against Diaz in Cook County Circuit Court for monetary damages for the harm she suffered. (Bankr. R. 93.) Diaz was represented by counsel throughout this lawsuit. On May 8, 2015, the Circuit Court entered a stipulated judgment in the amount of $100,000 against Diaz. (Bankr. R. 97.) Six months later, burdened by the civil damages award and business debts totaling $483,976.72, Diaz filed for Chapter 7 bankruptcy in Federal Court.[2] (Bankr. R. 163.)

During the course of the bankruptcy proceeding, Coady filed an adversary action objecting to the discharge of the $100,000 debt. Coady's complaint described the underlying incidents of abuse, Diaz's domestic battery conviction, and the subsequent civil judgment, and asserted that she was the victim of a "willful and malicious injury by the debtor" under 11 U.S.C. § 523(a)(6). (Bankr. R. 36.) Diaz admitted to the fact of his conviction and of the civil judgment in his Answer. (Bankr. R. 67–68.)

Based on those admissions, Coady moved for summary judgment of non-dischargeability. Bankruptcy Judge Thorne granted the motion, finding "substantial case law for the Northern District of Illinois which classif[ies] intentional torts as willful and malicious" and noting specifically that debts based on intentional torts such as assault and battery are ordinarily non-dischargeable under Section 523(a)(6). (Bankr. Tr., Ex. 1 to Appellee's Reply Br., 5:17–23) Judge Thorne also observed that Diaz was collaterally estopped from contesting the nature or existence of his "willful and malicious acts against the Plaintiff," by the combination of his pleading admissions and the two state court judgments. (*Id.* at 6:5–8.)

---

[1] In Illinois, a person commits domestic battery if he knowingly, and without legal justification, causes bodily harm to—or make physical contact of an insulting or provoking nature with—any family or household member. 720 ILCS 5/12-3.2(a).

[2] Prior to filing for bankruptcy, Diaz owned franchise locations for an Anytime Fitness gym and a Subway restaurant. (Bankr. R. 180–81.)

2

In this appeal, Diaz argues that the bankruptcy court erred by failing to address the precise amount of Coady's stipulated damages award held to be non-dischargeable. (Appellant's Opening Br. 8–9.) Diaz claims that Judge Thorne improperly applied the legal test for collateral estoppel when she held that Diaz would remain liable for the entire $100,000 judgment upon exiting Chapter 7. (*Id.* at 9.) As Diaz sees things, because the civil judgment was entered by consent, it fails the "actually litigated" prong of the test for collateral estoppel in future proceedings, and therefore that summary judgment of non-dischargeability should not have been entered. (*Id.*) Diaz also contends he did not fully grasp the consequences of his actions when he acceded to the stipulated judgment in the Circuit Court of Cook County. Instead, Diaz claims, he believed only that his legal bills would cease and "enjoyed the false confidence . . . that his decision could be undone in bankruptcy." (*Id.* at 11–12.)

Diaz does not challenge the categorization of his actions against Plaintiff as constituting a "willful and malicious injury" under Section 523(a)(6), nor does he challenge the preclusive effect his state court conviction for criminal domestic battery had on that categorization.

## DISCUSSION

### I. Standard of Review

Pursuant to 28 U.S.C. § 158(a), this court has jurisdiction to hear appeals from the final orders and judgments of bankruptcy courts. On appeal, this court reviews the Bankruptcy Court's findings of fact for clear error and its legal conclusions *de novo*. *In re Mississippi Valley Livestock, Inc.*, 745 F.3d 299, 302 (7th Cir. 2014). Factual findings are deemed clearly erroneous where, despite supporting evidence, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake [was] committed." *Kovacs v. United States*, 614 F.3d 666, 672 (7th Cir. 2010) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The twin doctrines of claim preclusion and issue preclusion—traditionally known as res judicata and collateral estoppel, respectively—serve to prohibit parties from engaging in

duplicative litigation.[3] Claim preclusion prevents parties from asserting claims arising out of the same facts that support claims that were, or could have been, advanced in an earlier proceeding. *Grip–Pak, Inc. v. Ill. Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982). The doctrine protects the finality of judicial decisions and reduces the cost of litigation. *Id.* Claim preclusion applies to bar future lawsuits when there is: "(1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits" in the original action. *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2013) (citation omitted). Causes of action are considered identical if they are "based on the same, or nearly the same, factual allegations arising from the same transaction or occurrence." *Id.* Federal courts must afford state court judgments the same preclusive effect those judgments would receive in their home states. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 (1982) (citing 28 U.S.C. § 1738).

Issue preclusion has a different aim: economy. Instead of promoting finality, the doctrine of issue preclusion holds that "if an issue happens to have been litigated and determined in a previous suit between the parties, there is no reason to litigate it again." *Grip–Pak*, 694 F.2d at 469. Unlike claim preclusion, issue preclusion may be invoked in unrelated claims and asserted by litigants not party to the original suit. *Id.* Issue preclusion applies in a subsequent proceeding when: (1) the issues addressed are identical, (2) the issue was actually litigated in the prior proceeding, (3) determination of the issue was essential to the prior judgment, and (4) the party against whom issue preclusion is being invoked was fully represented in the prior action. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011). "Whereas [claim preclusion] forecloses all that which might have been litigated previously,

---

[3] Although the two concepts are based on different theories and are subject to different standards, they can be easily confused. *See 18A* Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc. Juris.* § 4443 (2d ed. 1986) ("It might [] be better to discard the res judicata vocabulary of preclusion by judgment. . . . Courts nonetheless persist in speaking of res judicata and collateral estoppel, or claim and issue preclusion. Little harm is done so long as the proper questions are asked."). In the interests of clarity and consistency, this court will refer to claim and issue preclusion by their modern terms.

[issue preclusion] treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).

## II. The Bankruptcy Court Properly Granted Summary Judgment in Favor of Coady

The parties briefed this appeal as a question of issue preclusion without mentioning the role played by claim preclusion. Regardless of how the parties choose to characterize the issue, the result here is the same: the parties' stipulated judgment bars relitigation as to the amount of the debt owed Coady.

Diaz claims the Bankruptcy Court erred by misapplying the "actually litigated" prong of the test for issue preclusion. Since the civil judgment against him was entered into by consent, rather than by jury verdict or grant of summary judgment, Diaz claims the precise amount of the $100,000 award was not an "actually litigated" issue.

### A. Claim Preclusion Blocks Diaz's Attempt to Revisit the Amount of Coady's Debt Held Non-Dischargeable

Diaz is correct that courts hesitate to apply issue preclusion in cases of stipulated or consent-based judgments. (Appellant's Opening Br. 11–13.) Such judgments typically do not give rise to issue preclusion unless it is clear that the parties intended their agreement to have such an effect on a specific issue. *Arizona v. California*, 530 U.S. 392, 414 (2000). The rationale behind this rule is that the "issues underlying a consent judgment generally are neither litigated nor essential to the judgment." *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 178 (7th Cir. 1995).

Diaz, however, ignores the actual effect of stipulated judgments. Though they may not support issue preclusion, stipulated judgments do give rise to claim preclusion. *Arizona*, 530 U.S. at 414 (citing 18 Wright, Miller & Cooper, *Fed. Prac. & Proc.* § 4443 (1981)). The Supreme Court has repeatedly affirmed this maxim in cases where litigants have attempted to rely on stipulated judgments as a basis for a subsequent dispute. *See United States v. Int'l Bldg. Co.*, 345 U.S. 502, 506 (1953) ("Certainly the judgments entered are res judicata of the tax claims for

5

the [prior years], whether or not the basis of the agreements on which they rest reached the merits.").

In seeking to revisit the amount of the debt to be discharged, Diaz is not questioning any of the various sub-issues that may or may not have formed the basis for the stipulated judgment—for example, whether he actually injured Ms. Coady, or whether he acted with malice. He is challenging the judgment itself. Contrary to Diaz's contention that his case is "nearly identical" (Appellant's Opening Br. 10), this is not the sort of situation the Supreme Court faced in *Arizona v. California*, 530 U.S. 392 (2000). In that case, the Court held that a prior consent decree between the U.S. Government and a Native American tribe regarding land ownership did not preclude the tribe's later claims to increased water usage for the disputed land. *Id.* at 417–18. Since the consent judgment "was ambiguous as between mutually exclusive theories of recovery," it was deemed "too opaque to serve as a foundation for issue preclusion." *Id.* Neither party sought to avoid the effects of the consent judgment itself, however, as Diaz seeks to do here. *Id.* at 414 ("As between the parties . . . the settlement indeed had, and was intended to have, claim-preclusive effect—a matter the United States and the Tribe readily concede."). Similarly, in *United States v. International Building Co.*, 345 U.S. 502 (1953), the stipulated judgments absolving a taxpayer of deficiency liability for three tax years in the 1930s were found to conclusively settle those *claims*, even if the Supreme Court denied their usefulness as sources of *issue* preclusion for disputed matters within later tax disputes. *Id.* at 505–06.

Diaz nevertheless believes the amount of the judgment he owes Coady is open for review. He cites *Brown v. Felsen*, 442 U.S. 127 (1979), for the proposition that "[t]he mere fact that a conscientious creditor has previously reduced his claims to judgment should not bar further inquiry into the true nature of the debt." *Id.* at 138. Some courts have cited *Brown* for the notion that claim preclusion is inapplicable in dischargeability proceedings, and that only the narrower doctrine of issue preclusion applies. *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th

6

Cir. 1994); s*ee also In re Maurice*, 138 BR 890, 897 (N.D. Ill. Bankr. 1992). This is accurate in the sense that claim preclusion can never prevent the bankruptcy court from examining the unique question of dischargeability. It does not mean, however, that judgments establishing the existence and amounts of the actual debts in question do not warrant claim preclusion in future suits. *See Int'l Bldg. Co*, 345 U.S. at 506; *In re Sasson*, 424 F.3d 864, 872 (9th Cir. 2005).

The procedural posture in *Brown* illustrates this point. The claimant, Brown, was seeking to enforce a stipulated judgment against the debtor, Felsen, entered after a previous lawsuit. *Brown*, 442 U.S. at 128. Brown, along with a third-party bank, had alleged fraud as just one of several causes of action against Felsen, and as a result it was impossible to determine the basis for the stipulated judgment. *Id.* Felsen took advantage of this obscurity and managed to repeatedly invoke claim preclusion in the lower courts. *Id.* at 130–31. Only by treating the debt he owed Brown as settled could Felsen argue that it should be discharged—otherwise courts could reexamine his actions for evidence of fraud. The Supreme Court disapproved of this strategy, finding that the fraud alleged in the adversary proceeding under review had never been addressed and therefore claim preclusion could not be invoked to stop the bankruptcy court from examining this new issue. *Id.* at 138. But the Court's desire to keep the door open for inquiries into the nature of the debt did not allow for a challenge to the *existence* or *amount* of the debt under consideration for discharge:

> [P]etitioner readily concedes that the prior decree is binding. That is the cornerstone of his claim. He does not assert a new ground for recovery, nor does he attack the validity of the prior judgment. Rather, what he is attempting to meet here is the new defense of bankruptcy which respondent has interposed between petitioner and the sum determined to be due him.

*Id.* at 133. The fact and amount of Diaz's debt to Coady is settled. Even on the point *Brown* does make—that claim preclusion cannot bar inquiries into a debt's *nature*—Diaz's situation is distinguishable. There is not any confusion as to the conduct upon which the judgment rests. Diaz's guilty plea provides an independent factual basis for the stipulated judgment, and the

7

causes of action underlying Coady's civil suit all address the same type of behavior—intentional torts.[4]

The rule that stipulated judgments support claim preclusion has been applied nationwide in bankruptcy cases where stipulated judgments establish the existence of debts for which a debtor seeks discharge. *See In re Comer*, 723 F.2d 737, 740 (9th Cir.1984); *In re Sasson*, 424 F.3d at 872; *In re Soliman*, 515 B.R. 179, 192 (S.D.N.Y. Bankr. 2014). In the Northern District of Illinois, numerous cases have held the same. In *In re Reitz*, 69 B.R. 192 (N.D. Ill. 1986), the debtor there similarly tried to challenge the specific amount of his debt found to be non-dischargeable due to fraud. *Id.* at 198. The District Court on appeal refused to engage this argument, stating that "[w]hile the Circuit Court judgment is not conclusive on the issue of fraud because a determination of fraud was not necessary to that judgment, [citation omitted], it is res judicata as to the amount of the debt." *Id.* The same held true in *In re Dempster*, 182 B.R. 790 (N.D. Ill. Bankr. 1995), where the bankruptcy court held the amount of a debt to have been fixed by a default judgment entered against the debtor in Illinois state court. *Id.* at 799. Like stipulated judgments, default judgments are usually not deemed "actually litigated" for the purposes of issue preclusion, but do trigger claim preclusion as to the judgment itself. *Id.* (citing *Meyer*, 36 F.3d at 1379). Finally, in *In re Cunningham*, 59 B.R. 743 (N.D. Ill. Bankr. 1986), the bankruptcy judge stated the rule plainly: "Under the doctrine of res judicata . . . Debtor is not allowed to raise a collateral attack in this Court as to the validity of the default judgment obtained by Plaintiff." *Id.* at 746.

In short, a prior consent, stipulated, or otherwise not-actually-litigated judgment may not preclude every issue in a future bankruptcy discharge proceeding, but questions regarding the size of the debts claimed must not be revisited in a collateral attack. The proper forum for such challenges would be an appeal from that judgment in the original forum. Diaz agreed to the

---

[4] Coady sued Diaz for six counts of assault, battery, and false imprisonment. (Bankr. R. 93–96.)

8

judgment of $100,000 entered against him, and he is not allowed to relitigate its magnitude here.

      **B.**    **The Civil Damages Award was "Actually Litigated" as a Matter of Issue Preclusion**

For the reasons explained, the doctrine of claim preclusion bars Diaz's challenge to the Bankruptcy Court's order. The parties instead briefed the question as one of issue preclusion, however, and the court will address those arguments to explain why the result remains the same. Most of the elements of issue preclusion are not disputed in this case. The only question is whether the amount of damages awarded may properly be considered "actually litigated" since they arose from a stipulated judgment. *Matrix IV*, 649 F.3d at 547.

As stated, courts are wary of the conclusion that matters agreed upon by the parties support issue preclusion, because the "issues underlying a consent judgment generally are neither litigated nor essential to the judgment." *People Who Care*, 68 F.3d at 178.[5] As a result, such judgments are only deemed "actually litigated" and afforded preclusive effect with respect to issues that the parties clearly intended to be foreclosed in future litigation. *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987) (citing *18* Wright, Miller & Cooper, *Fed. Prac. & Proc.* § 4443).

The question of damages in this case is one such issue. The Illinois Court's Stipulated Judgment Order is brief, to be sure, but outlines the necessary essentials: on motion of the parties, "Judgment be and hereby is entered in favor of plaintiff, SARAH [sic] COADY, and against defendant, ANTHONY DIAZ, in the amount of $100,000.00, inclusive of costs." (Bankr. R. 97.) There is no uncertainty here, and the intent of the agreement and effect of the order are obvious. *See Klingman*, 831 F.2d at 1296 (applying issue preclusion to a sub-matter specifically described on the face of a consent judgment); *In re Kmart Corp.*, 362 B.R. 361, 384 (N.D. Ill. Bankr. 2007) ("[T]he language of the Agreed Order demonstrates and allows a reasonable

---

      [5]    Diaz cites numerous Illinois state court cases for the same rule. (Appellant's Opening Br. 12-13) (collecting cases).

9

conclusion that Kmart, BONY, and Claimants understood its conclusive effect."). No further language is needed to confirm the foreclosure of Coady's claim for assault and battery, and the amount of damages awarded. Nor can Diaz, who agreed to the result, deny that he had a "full and fair opportunity to litigate the issue" of damages in the civil suit. *Kunzelman v. Thompson*, 799 F.3d 1172, 1176 (7th Cir. 1986) (citing *Kremer*, 456 U.S. at 481 n.22).

The judgment order resolves and decides the question of damages on its face. Choosing to view the amount of damages as a foreclosed "issue" embodied in the judgment rather than an element of the "claim" makes no practical difference: the precise amount of damages to be paid was clearly "actually litigated"—it had to have been in order to reach an agreed judgment. As stated above, the Supreme Court and Seventh Circuit cases that decline to apply issue preclusion to matters adjudicated by consent do so on the basis that the final judgment may not *necessarily* embody a resolution on the specific issue contested in the second lawsuit. None of these cases hold that a losing party can agree to pay his opponent a certain amount, permit a court to enter judgment against him to that effect, and then later pretend the payment he agreed to was not "actually litigated" in the first proceeding.

**III.    Diaz's Claims that He Did Not Understand the Consequences of Agreeing to the Stipulated Judgment Do Not Support Reversal**

Having disposed of Diaz's objections to the preclusive effect of the stipulated judgment, the court turns to Diaz's arguments regarding his acquiescence to the stipulated damages award in the first place. A collateral attack in federal court is not a proper forum for a facial challenge on the validity of the stipulated judgment, and Diaz does not directly advance such an argument here. Rather, in an attempt to buttress his denial that any "actual litigation" occurred in the Cook County civil case, Diaz contends that his stipulation does not warrant a preclusive effect because he did not understand the nature or consequences of his actions at the time. (Appellant's Opening Br. 7, 10-12.) Diaz asserts that:

> Here, there is absolutely no indication the Appellant was aware a stipulation in the Cook County civil case would be 'final' in any sense. To Appellant, his stipulation simply meant he no longer had to pay Attorney's fees and litigate.

(*Id.* at 12) (citations to record omitted). This view is hard to reconcile with the text of the Stipulated Judgment Order itself. The Order indeed signaled the end of (that) litigation and accumulation of legal fees, but its primary effect was spelled out in plain language: Diaz was legally bound to pay Coady $100,000.

Under Illinois Law, "[a] stipulation is an agreement by the parties with regard to an issue before the court." *Dawdy v. Sample*, 178 Ill. App. 3d 118, 127, 532 N.E.2d 1128, 1135 (4th Dist. 1989). Courts will generally enforce stipulations unless they are unreasonable, the products of fraud, or contrary to public policy. *Id.* Diaz identifies nothing in the record before Judge Thorne that suggests any of these grounds were present, or that supports Diaz's suggestions that his consent was anything less than voluntary. (Appellant's Opening Br. 7, 10–11; Appellant's Response Br. 6.)

Instead, in arguing for his lack of consent to the stipulation, Diaz relies primarily on an affidavit improperly submitted to this court on appeal.[6] (Diaz Aff., Appx. A076 to Appellant's Opening Br., 1–2.) Even were the court to give full consideration to the contents of that affidavit, the result here would not change. Diaz contends the affidavit establishes he entered into the stipulated judgment only because (1) he received poor legal advice regarding his ability to discharge the $100,000 judgment in a future bankruptcy, and (2) his financial health was rapidly deteriorating. (Diaz Aff. 2). Neither of these circumstances supports relief.

---

[6] It is well-settled that a party opposing summary judgment must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. *Liberles v. Cook County*, 709 F.2d 1122, 1126 (7th Cir. 1983). "If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Id.* This Affidavit, dated Nov. 6, 2016 (three days prior to the submission of Debtor's Opening Brief on appeal), was not attached to Debtor's Response to Plaintiff's Motion for Summary Judgment in the Bankruptcy Court; nor were the specific arguments featured therein mentioned in Debtor's Response. Diaz denies inserting any new items into the record and instead claims to be "providing the District Court . . . with context." (Appellant's Reply Br. 4.) Context may be valuable, but the Federal Rules of Bankruptcy Procedure do not provide for self-submitted affidavits pending appeals from bankruptcy court. FED. R. BANKR. PRO. 8009; 7TH CIR. R. 10(a).

11

With respect to bad legal advice, it suffices to say only that "bad legal advice does not relieve the client of the consequences of [his] own acts." *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2005). Bad legal advice may support a claim of legal malpractice, but it does not absolve Diaz of his duty to pay Coady. *Choice Hotels Int'l, Inc. v. Grover*, 792 F.3d 753, 756 (7th Cir. 2015).

Nor does financial hardship excuse Diaz. As Coady points out, recognizing a poverty defense "would permit any pro se plaintiff to avoid collateral estoppel effect, an argument that has been repeatedly rejected." (Appellee's Reply Br. 13) (citing cases). In any event, recognizing financial constraints as some kind of an escape from a debtor's consent to a stipulated judgment would make little sense: a "declining financial condition" is inherent in all bankruptcy filings. (Appellant's Opening Br. 11.)

Ultimately, Diaz's efforts to avoid admitting to the merits of Plaintiff's claim are unnecessary. Parties may agree to stipulations, consent judgments, and settlements for any number of reasons aside from the merits of the case at hand. The "true" motivation does not control the outcome here. As previously stated, the stipulated judgment at issue bears no signs of unreasonableness, fraud, or policy contravention. *See Dawdy*, 178 Ill. App. 3d at 127.

As a final note, Diaz's statement that "he enjoyed the false confidence of believing his decision could be undone in bankruptcy" arouses suspicion, not sympathy. (Appellant's Opening Br. 11.) Diaz is effectively admitting to entering into the stipulated judgment without the intention of abiding by it, stating even more explicitly in his affidavit: "Had I known that the Civil Judgment would be nondischargeable in a subsequent Bankruptcy filing, I would not have agreed to its entry." (Diaz Aff. 2.) The inability to pay one's debts is unfortunate, but "honest but unfortunate" debtors are not typically punished by courts for the mere fact of their insolvency. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). Diaz's statement here smacks of outright fraud—itself a ground for non-discharge under 11 U.S.C. § 523(a)(2)(A). *See Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 677 (7th Cir. 1995) (holding non-dischargeable a bank loan the

debtors entered into never intending to repay); *Brown*, 442 U.S. at 138–39 (remanding to the bankruptcy court to examine a stipulated judgment for evidence of fraud).

**IV:     Diaz's Policy Arguments and Claims of Misunderstanding are Not Persuasive**

Diaz's final argument challenges the Bankruptcy Court's ruling on policy grounds. He contends that holding Coady's $100,000 judgment to be non-dischargeable frustrates the purposes of the Bankruptcy Code and "eviscerates [his] Chapter 7 discharge." (Appellant's Opening Br. 13; Appellant's Response Br. 4.) This argument is both factually and legally untenable.

On his Voluntary Petition for Individual Bankruptcy, Diaz listed $483,976.72 in unsecured claims against just $7,950 in assets. (Bankr. R. 143–63.) The record shows that Diaz has already been relieved of $383,976.72 owed to 36 different creditors. *Id.* Lingering personal debt of $100,000 is significant, to be sure, but having won discharge from 80% of his debts, Diaz cannot seriously claim that his Chapter 7 filing was a "hollow exercise" absent total relief. (Appellant's Opening Br. 13.)[7]

More importantly, the values embodied in the Bankruptcy Code do not uniformly point towards "giving the honest Debtor a fresh start." (Appellant's Opening Br. 13.) By including Section 523 in the Bankruptcy Code, Congress recognized that there are certain debts, arising from certain obligations or behaviors, which must remain non-dischargeable regardless of magnitude. *See Mayer*, 51 F.3d at 674 (saying in regards to Section 523(a)(2)(A): "Congress concluded that preventing fraud is more important than letting defrauders start over with a clean slate, and we must respect that judgment.").

Bankruptcy courts hold equitable powers, *see* 11 U.S.C. § 105(a), but they are not at liberty to ignore statutory mandates. *See Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014) ("Section

---

[7] In absolute terms, Debtor's discharge represents an amount over one and a half times the median value of a single family home in Cook County. *Cook County Home Prices & Values*, Zillow (last updated July 31, 2017), https://www.zillow.com/cook-county-il/home-values/.

105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits."). "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). As Judge Thorne observed, Diaz's liability to Coady arises from actions falling squarely within the scope of Section 523(a)(6)'s "willful and malicious injury" exclusion. (Bankr. Tr. 5:5–6:15.) The Code does not grant any court the liberty to ignore the discharge prohibitions of Section 523 in the interests of a "fresh start."

## CONCLUSION

For the reasons stated above, the judgment of the bankruptcy court is AFFIRMED.

ENTER:

Dated: September 19, 2017

_____
REBECCA R. PALLMEYER
United States District Judge